Matter of the Application of JOHN N. CARLISLE, as State Commissioner of Highways, for a Writ of Mandamus against the Board of Supervisors of Onondaga County.

(Supreme Court, Onondaga Special Term, March, 1914.)

Highways — Highway Law, § 172 — maintenance and repair of — when deemed to have been accepted by board of supervisors of county.

In the fall of 1912 two state highways, and two county highways, running through six towns of Onondaga county were completed or nearly so and, as required by section 172 of the Highway Law, a statement of the number of miles of state and county highways in each town and the amount which each,

respectively, was required to pay on account of maintenance for the year 1913 was transmitted to the clerk of the board of supervisors, and thereafter pursuant to section 134 of the Highway Law notice was given that the county highways would be accepted, and on January 8, 1913, they were so accepted. The general tax levy made on December 15, 1912, as required by law, included no tax for maintenance and repair for the year 1913, nor has any tax for that year been included in subsequent levies. Held, that under the provisions of section 134 of the Highway Law, that "upon the proper completion of such highway or section thereof and after filing the notice above given it shall be deemed to have been accepted by the board of supervisors of such county and thereafter it shall be maintained as provided in this chapter," a writ of mandamus would issue to compel the board of supervisors pursuant to said section 172 to provide funds for the maintenance and repair of county highways, the duty under said section being merely ministerial.

APPLICATION for a writ of mandamus.

Thomas Carmody, attorney-general (James J. Barret, Edward G. Griffin, deputies, of counsel), for petitioner.

Herbert L. Smith, county attorney, opposed.

CROUCH, J. It is sought to compel the board of supervisors of Onondaga county, pursuant to section 172 of the Highway Law, to cause the sum of $900 to be raised by certain towns of Onondaga county for the maintenance and repair of county highways.

In the fall of 1912 four highways running through six towns of Onondaga county were completed or nearing completion, two being state and two county highways. Under date of October 15, 1912, and on or about October 28, 1912, a statement specifying the number of miles of state and county highways in each town and the amount which each town was required to pay on

account of the maintenance for the year 1913 was transmitted to the clerk of the board of supervisors as required by section 172 of the Highway Law. On the 18th of December, 1912, notice was given pursuant to section 134 of the Highway Law that the county highways in question would be accepted. On the 27th of December, 1912, the two state highways were accepted and on January 8, 1913, the two county highways were accepted.

The general tax levy was made by the board of supervisors as required by law on December 15, 1912, but included no tax for maintenance and repair for the year 1913; nor has any tax for that year been included in subsequent levies. The board claims that inasmuch as the highways had not been accepted on December 15, 1912, when the tax levy for that year was made, it had no power or authority to cause the towns in question to pay the statutory maintenance tax for the year 1913. This contention, so far at least as the county highways are concerned, seems to rest largely upon the following provision of section 134 of the Highway Law: "Upon the proper completion of such highway or section thereof and after filing the notice above given it shall be deemed to have been accepted by the board of supervisors of such county and *thereafter* it shall be maintained as provided in this chapter."

Assuming that the board has discretion in such a case, I do not think the maintenance which is to be "thereafter" exercised under section 134 has anything to do with the raising of the fund which is to pay for such maintenance. The intent of the statute seems to be to fix the point of time when it becomes the duty of the public officials physically to maintain and repair and to expend public moneys for that purpose. Up to that point the duty rests with the con-

33

tractor. The statute does not prevent the levy of a tax to be paid to the credit of the fund out of which the expense of maintenance and repair for the forthcoming year is to be paid. In the present instance the towns had the benefit and use of the highways in question substantially the entire year and should be willing to pay their proportion to the credit of the fund.

The creation and maintenance of an improved highway system is a great governmental undertaking. I think the commissioner of highways should be and is vested with as much discretion as he has sought to exercise in the instances here involved. In any event the duty of the board of supervisors was, under section 172, merely ministerial. Having received the statement, it should have proceeded as directed. The writ prayed for may issue.

Ordered accordingly.